FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 14, 2025

SEAN F. McAVOY, CLERK

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BRUCE H.,[1] <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, <br> Commissioner of Social Security,[2] <br><br> Defendant. | No.   1:25-cv-3019-EFS <br><br> **ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS** |

Plaintiff Bruce H. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 16 benefits. Plaintiff claims he is unable to work due to mental-health and cognitive difficulties. Because

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

[2] Pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g), Commissioner Frank Bisignano is substituted as Defendant.

DISPOSITIVE ORDER - 1

the ALJ failed to fully and fairly consider the medication-management records reflecting waxing abnormal mental-health symptoms, the ALJ's analysis of Plaintiff's testimony about his symptoms and the medical opinions was consequentially impacted. This matter is remanded for further proceedings.

## I.    Background

Previously, Plaintiff was awarded supplemental security income benefits beginning March 12, 2014, based on the severe impairments of organic brain syndrome, and affective disorder and/or schizophrenia.[3] However, these benefits were suspended in October 2017 when Plaintiff was incarcerated.[4]

In December 2020, after his release from prison, Plaintiff applied for benefits again.[5] The agency denied his application.[6] Upon request,

_____

[3] AR 70–83, 107–13.

[4] AR 304, 362.

[5] AR 281–90.

[6] AR 123–26.

DISPOSITIVE ORDER - 2

ALJ Cecilia LaCara held a telephone hearing in November 2022, during which Plaintiff and a vocational expert testified.[7]

Plaintiff, who was 52 years old, testified that as a child he had been in special education classes due to his difficulties reading and spelling and that he attended school until the eighth grade.[8] He stated that he did not have a driver's license because he would have difficulty passing the driver's written examination.[9] He stated that he tried to obtain his GED when he was incarcerated but he was unsuccessful due to his limitations with reading, spelling, and concentrating on math.[10] Plaintiff testified that he struggles with paranoia, anxiety, and hearing voices. He said that it is difficult to differentiate between real or hallucinated voices when he is a crowd of people.[11] He takes medication

---

[7] AR 42–69, 123–26, 137–64.

[8] AR 48.

[9] AR 48.

[10] AR 49.

[11] AR 52.

DISPOSITIVE ORDER - 3

to help with hallucinations, anxiety, and sleep.[12] To help address his depression, he tries to get out of his room and get fresh air at least once a day.[13] He testified that his depression is rooted in his inability to socialize with his family as he would like, given that his auditory hallucinations make it difficult to concentrate when he is around other people, causing him to get frustrated and irritated.[14] Plaintiff testified that, except for two incidents, he has been clean and sober since 2017.[15] Plaintiff stated that he tries to go to weekday AA meetings where he sits in the back.[16] He lives with his mom and helps with the dishes, cleaning the bathroom, and with yard work.[17]

---

[12] AR 51–53.

[13] AR 53.

[14] AR 54.

[15] AR 55.

[16] AR 56.

[17] AR 56.

DISPOSITIVE ORDER - 4

1    After the hearing, ALJ LaCara issued a decision denying

2    benefits.[18] The Appeals Counsel agreed with the ALJ's decision.[19]

3    Plaintiff appealed the denial of benefits to federal district court.

4    Thereafter, the district court granted the parties' stipulated motion for

5    remand, and ordered a new hearing and evaluation by the ALJ.[20]

6    A second administrative hearing was held in early November

7    2024.[21] Plaintiff testified about the different voices he hears in his

8    head, and about how they distract him and make it difficult to

9    concentrate.[22] Plaintiff stated that he listens to music on a Walkman to

10   try and block out the voices, and he shared that when he gets

11   frustrated, he breaks stuff, including televisions.[23] He also has

12   problems sleeping because the voices relay that someone is going to

_____

14   [18] AR 788–08.

15   [19] AR 809–15.

16   [20] AR 816–25 (E.D. Wash. No. 1:23-cv-3178-EFS).

17   [21] AR 768–87.

18   [22] AR 774–75.

19   [23] AR 777–78.

come into his house and kill him.[24] Plaintiff stated that he had not taken his medication for about a year because the medication made him drowsy.[25] On this point, the treatment records reflect that Plaintiff's medication provider transitioned Plaintiff in August 2023 from oral medication to an antipsychotic injection in hopes of better addressing his auditory hallucinations; however, after receiving three injections, Plaintiff stopped attending medication-management appointments in November 2023 and was discharged from services in April 2024.[26] Plaintiff testified that he stopped going to mental-health treatment because of the voices saying that people were getting into his home.[27]

---

[24] AR 778.

[25] AR 780.

[26] *See, e.g.*, AR 1261, 1274, 1278, 1315, 1327, 1486.

[27] AR 781–82.

After the hearing, ALJ LaCara denied benefits again.[28] The ALJ found Plaintiff's alleged symptoms were "not entirely consistent with the medical evidence and other evidence in the record."[29] As to the medical opinions and prior administrative findings, the ALJ found:

- the prior administrative finding of state agency psychiatric consultant Steven Haney, MD, persuasive.

- the prior administrative finding of state agency psychological consultant Patricia Kraft, PhD, and the consultative psychological examinations of Jay Toews, EdD; R.A. Cline, PsyD; Jenifer Schultz, PhD; and David Morgan, PhD, not persuasive.[30]

As to the sequential disability analysis, the ALJ found:

---

[28] AR 745–67. Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[29] AR 754. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should replace the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499, n.2 (9th Cir. 2022).

[30] AR 756–58.

- Step one: Plaintiff had not engaged in substantial gainful activity since December 9, 2020, the application date.

- Step two: Plaintiff had the following medically determinable severe impairments: depression, anxiety, post-traumatic stress disorder (PTSD), personality disorder, learning disorder, and borderline intellectual functioning.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations:

  He is limited [to] simple, routine, repetitive tasks that can be learned by short demonstration. He can have no direct contact with the public. He can have occasional interaction with coworkers and supervisors. He is limited to only occasional changes in the work setting and work process.

- Step four: Plaintiff has no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant

DISPOSITIVE ORDER - 8

1    numbers in the national economy, such as janitor, hand

2    packager, and laundry worker.[31]

3    Plaintiff timely requested review of the ALJ's decision by this

4    Court.[32]

5    ## II.    Standard of Review

6    The ALJ's decision is reversed "only if it is not supported by

7    substantial evidence or is based on legal error" and such error

8    impacted the nondisability determination.[33] Substantial evidence is

9    "more than a mere scintilla but less than a preponderance; it is such

10    relevant evidence as a reasonable mind might accept as adequate to

11    _____

12    [31] AR 748–60.

13    [32] ECF No. 1.

14    [33] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. §

15    405(g); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012),

16    *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that

17    the court may not reverse an ALJ decision due to a harmless error—

18    one that "is inconsequential to the ultimate nondisability

19    determination").

DISPOSITIVE ORDER - 9

1    support a conclusion."[34] The court looks to the entire record to

2    determine if substantial evidence supports the ALJ's findings.[35]

3    ### III.   Analysis

4        Plaintiff argues the ALJ erred when evaluating his symptom

5    reports and the medical opinions. In response, the Commissioner

6    argues the ALJ's disability evaluation is supported by substantial

7    evidence. As is explained below, the ALJ's evaluation contains

8    consequential error.

9

10

11    _____

12    [34] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978,

13    980 (9th Cir. 1997)).

14    [35] *Kaufmann v. Kijakazi*, 32 F4th 843, 851 (9th Cir. 2022). *See also*

15    *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (requiring

16    the court to consider the entire record, not simply the evidence cited by

17    the ALJ or the parties) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386

18    (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not

19    indicate that such evidence was not considered[.]").

**A.      Symptom Reports: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ reversibly erred by improperly rejecting Plaintiff's symptom testimony for reasons that were not clear and convincing, while the Commissioner argues the ALJ's decision to discount Plaintiff's symptom claims is supported by substantial evidence. As is explained below, the ALJ erred by not fully and fairly considering the evidence when evaluating the effect of Plaintiff's symptoms, and this error in turn impacted the ALJ's evaluation of the medical opinions.

1.      <u>Standard</u>

The ALJ must identify what symptom claims are being discounted and clearly and convincingly explain the rationale for discounting the symptoms with supporting citation to evidence.[36] This requires the ALJ to "show his [or her] work" and provide a "rationale . .

---

[36] *Smartt*, 53 F.4th at 499; *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); Soc. Sec. Rlg. 16-3p.

1    . clear enough that it has the power to convince" the reviewing court.[37]

2    Factors the ALJ may consider when evaluating the intensity,

3    persistence, and limiting effects of a claimant's symptoms include: 1)

4    objective medical evidence, 2) daily activities; 3) the location, duration,

5    frequency, and intensity of pain or other symptoms; 4) factors that

6    precipitate and aggravate the symptoms; 5) the type, dosage,

7    effectiveness, and side effects of any medication the claimant takes or

8    has taken to alleviate pain or other symptoms; 6) treatment, other than

9    medication, the claimant receives or has received for relief of pain or

10   other symptoms; and 7) any non-treatment measures the claimant uses

11   or has used to relieve pain or other symptoms.[38]

12        2.    ALJ's Reasons and Analysis

13        The ALJ broadly found Plaintiff's statements concerning the

14   intensity, persistence, and limiting effects of his medically

15   determinable impairments were "not entirely consistent with the

16

17   _____

18   [37] *Smartt*, 53 F.4th at 499 (alteration added).

19   [38] 20 C.F.R. § 404.1529(c)(2), (3).

1  medical evidence and other evidence in the record."[39] The ALJ then

2  supported this broad finding with the following bases: Plaintiff's

3  reported symptoms were 1) inconsistent with the improvement shown

4  in treatment notes; 2) inconsistent with the observed normal mental

5  status findings during mental-health treatment, primary care, and

6  emergency room visits; 3) inconsistent with Plaintiff's denial of mental-

7  health symptoms during primary care and emergency visits, and his

8  contradicted statements of sobriety; 4) not supported by the lack of

9  missed, cancelled, or rescheduled appointments; and 5) not entirely

10  consistent with his activities.[40] The Court addresses each of these

11  articulated bases in turn.

12        a.    _Substantial evidence does not support a finding of_
                _sustained improvement with treatment._

13  Symptom improvement must be weighed within the context of an

14  "overall diagnostic picture," particularly for mental symptoms, which

15

16

17  _____

18  [39] AR 754.

19  [40] AR 754–56.

1    often wax and wane.[41] Reports of improvement "must be interpreted

2    with an understanding of the patient's overall well-being and the

3    nature of her symptoms," as well as with an awareness that "improved

4    functioning while being treated and while limiting environmental

5    stressors does not always mean that a claimant can function effectively

6    in a workplace."[42]

7        Here, notwithstanding the varied medication approaches by his

8    medication manager, the treatment record does not support sustained

9    mental-health improvement. For instance, Plaintiff continued to

10   _____

11   [41] *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *see also*

12   20 C.F.R. §§ 416.920a(c)(1) §§ 416.929(c)(3); *Lester v. Chater*, 81 F.3d

13   821, 833 (9th Cir. 1995) ("Occasional symptom-free periods . . . are not

14   inconsistent with disability.").

15   [42] *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("Cycles of

16   improvement and debilitating symptoms are a common occurrence, and

17   in such circumstances it is error for an ALJ to pick out a few isolated

18   instances of improvement over a period of months or years and to treat

19   them as a basis for concluding a claimant is capable of working.").

DISPOSITIVE ORDER - 14

present to the medication-management provider with abnormal mental status:

- October 2022: observed with anxious mood; dysphoric, anxious affect; disorganized thought process; and poor working memory.[43]

- January 2023: observed with anxious mood; dysphoric, anxious affect; poor attention span; disorganized thought process; paranoid and helpless thought content; and poor working memory.[44]

- April 2023: presented as "vigilant, suspicious, and twitchy" and with a sad, anxious mood; dysphoric and anxious affect; poor attention span; disorganized and racing thought process; concrete cognition; and poor working memory.[45]

- June 2023: presented as inattentive, with poor eye contact, sad, anxious mood; dysphoric, anxious affect; poor attention

---

[43] AR 734–38.

[44] AR 1236–41.

[45] AR 1255–59.

span; disorganized thought process with blocking; paranoia; concrete cognition; and poor working memory.[46]

- September 2023: presented with soft, decreased rate of speech; sad, anxious mood; anxious, irritable affect; distractible; disorganized; concrete cognition; and poor working memory.[47]

- November 2023: presented on two occasions with psychomotor retardation, anxious mood and affect; distractible; disorganized thought process; paranoia; concrete cognition; and poor working memory.[48]

This is not a medical record that reflects sustained, significant mental-health improvement. Although the medical record does contain "normal" mental-health statuses in other treatment records, the ALJ failed to clearly explain why such normal findings overrode the waxing

---

[46] AR 1283–86.

[47] AR 1328–32.

[48] AR 1348–66.

1   abnormal findings noted in other treatment records.[49] Thus, even

2   though as the ALJ pointed out, the record contains medical records

3   with normal mental status findings or they note that Plaintiff

4   mentioned that his symptoms were improved at that particular

5   moment, the ALJ's finding that Plaintiff experienced significant

6   sustained improvement in his mental-health symptoms over the course

7   of the relevant period is not supported by substantial evidence.

8           b.    <u>Substantial evidence does not support a finding that</u>
                  <u>Plaintiff's reported symptoms were inconsistent with</u>
9                 <u>the medical evidence.</u>

10       The ALJ's finding that Plaintiff's observed normal mental status

11  findings were inconsistent with Plaintiff's reported symptoms, such as

12  irritation, avoidance of social interaction, and difficulties focusing due

13  to auditory hallucinations, is also not supported by substantial

14  _____

15  [49] *See Ghanim*, 763 F.3d at 1164 (emphasizing that treatment records

16  must be viewed considering the overall diagnostic record); *Gallant v.*

17  *Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (disallowing the ALJ from

18  cherry picking evidence to support a conclusion that contradicts the

19  overall diagnostic record).

1  evidence. As the ALJ highlighted, there are several medical records

2  from not only mental-health providers, but also primary care and

3  emergency providers, that reflect that Plaintiff was observed with a

4  normal mental status. Yet, the ALJ fails to clearly explain how these

5  observed normal mental status findings, particularly the ones from

6  Plaintiff's treatment for foot issues, should be given more consideration

7  than the medication-management notes that reflect that Plaintiff was

8  observed with significant mental symptoms, as reflected in the above

9  listed medical records.[50]

_____

11  [50] *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (comparing

12  psychologist's mental health findings against findings from *other*

13  *mental health* professionals); *Diedrich v. Berryhill*, 874 F.3d 634, 641

14  (9th Cir. 2017) (noting that courts do "not necessarily expect" someone

15  who is not a mental-health professional to document observations

16  about the claimant's mental-health symptoms); *see also Jajo v. Astrue*,

17  273 F. App'x 658, 660 (9th Cir. 2008) (not reported) ("The ALJ relied on

18  the lack of corroboration on the part of the orthopedic consultant and

19  various emergency room reports. However, the purpose of those visits

DISPOSITIVE ORDER - 18

1      Moreover, consistent with the paranoia observed by the

2  medication-management provider, the record reflects that Plaintiff had

3  a crisis intervention in May 2024 with law enforcement during which

4  he presented as paranoid and irritated, reporting that someone was

5  breaking into his apartment, hacked his phone, dressed in his clothes,

6  and impersonated him.[51]

7      When viewed fully and fairly, this record does not afford

8  substantial evidence to support the ALJ's finding that Plaintiff's

9  reported symptoms were inconsistent with the "normal" mental status

10  findings in the medical record.

11          c.   _Substantial evidence does not support the ALJ's_
                 _decision to discount Plaintiff's reported symptoms due_
12               _to offering inconsistent statements about such_
                 _symptoms._
13
       An ALJ may consider whether a claimant offers conflicting
14
   symptom reports or other inconsistent statements that indicate a lack
15

16  _____

17  was not to assess [the claimant]'s mental health, and thus any lack of

18  corroboration is not surprising.").

19  [51] AR 1487.

DISPOSITIVE ORDER - 19

of candor about the extent of the symptoms.[52] Here, the ALJ noted that Plaintiff usually reported few mental-health symptoms to either his primary care or emergency providers for transient physical issues.[53] The ALJ fails to meaningfully explain why its fair to place more weight on the mental-health symptoms reported by Plaintiff—or lack thereof—to providers for ailments relating to bicep, foot, and ankle pain, and ingrown toenails, or his concerns about transmittable diseases, as compared to his reported mental-health symptoms to his mental-health medication-management providers or therapists.[54]

As to the conflict between Plaintiff's statements to mental-health providers in 2021 and 2022 that he remained clean and sober, versus

---

[52] 20 C.F.R. § 416.929(c)(4). *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid.").

[53] AR 755–56.

[54] *See Diedrich*, 874 F.3d at 641; *see also Jajo*, 273 F. App'x at 660.

the medical records indicating that Plaintiff used methamphetamine in September 2021 and July 2022, the ALJ fails to meaningfully explain why such conflict is a basis to discount Plaintiff's reported symptoms. The ALJ did not find substance abuse to be a severe impairment and did not analyze whether Plaintiff's substance abuse contributed to his mental-health impairments. None of the medical experts opined that Plaintiff's impairments were the primary result of alcohol or drug use.[55]

> d. _Substantial evidence does not support the ALJ's decision to discount Plaintiff's reported difficulties given his attendance record for medical appointments._

The ALJ found that Plaintiff's reported inability to sustain and maintain fulltime employment was inconsistent with the medical record that showed that he did not miss, cancel, or reschedule appointments.[56] The ALJ also found it notable that the recent records

---

[55] _See, e.g.,_ AR 90, 102, 416–22, 436, 440–43, 446, 1033.

[56] AR 756.

showing issues with attending appointments were during a time that Plaintiff reported that he worked as a caregiver.[57]

This basis to discount Plaintiff's reported difficulties attending and maintaining work is not supported by substantial evidence, as there is evidence that he was late or missed appointments. For instance, Plaintiff arrived late (and agitated) to his therapy appointment in June 2021, and in January 2022, he was late to an individual therapy visit because he forgot about the appointment.[58] Furthermore, in April 2024, a Comprehensive Healthcare note states, "Client has had numerous no shows for med provider, injections, and therapy appointments. Med provider instructed nurse to call client and check on him, but the only phone number listed was no longer a working number."[59] Thus, there is evidence that he missed or was late to appointments.

---

[57] AR 756.

[58] AR 519, 1097.

[59] AR 1486.

1    As to the record relied on by the ALJ in which Plaintiff reported

2    in April 2024 that he works "as a caregiver for YNH services 'at 101 S.

3    6th Street,'" this is a crisis intervention record discussing Plaintiff's

4    report to law enforcement that someone broke into his apartment. The

5    author of the crisis note describes Plaintiff's reports as "paranoid

6    complaints," and mentions that "[w]hen any information was

7    challenged or explained, he appeared to become more irritated that no

8    officer would come and 'investigate.'"[60] Based on Plaintiff's paranoid

9    presentation, it was questionable for the ALJ to rely on Plaintiff's

10   report of employment during this crisis intervention. Moreover, the

11   earnings records contradict a finding that Plaintiff was employed in

12   any meaningful way. Plaintiff's most recent certified earnings record

13   indicates that on June 25, 2024, YNH reported that Plaintiff was hired

14   in the second quarter of 2022 but that he only earned $51.00 in total

15   earnings from YNH.[61] Such low earnings does not indicate substantial

16

17

18   [60] AR 1487.

19   [61] AR 977–83, 983.

employment, nor does the June 2024 earnings record indicate employment with YNH in April 2024.

However, a treatment record for an ingrown toenail in July 2024 states, "gave work letter to be off for 2 days."[62] This would indicate Plaintiff was employed. Yet, the prior mental-health treatment records, along with the crisis intervention in spring 2024, question this employment inference. For instance, the last medication-management record authored by Plaintiff's treating provider Phyllis Henderson, MD, is from November 30, 2023.[63] During this medication-management appointment, Plaintiff presented as distractible with psychomotor retardation, anxious mood and affect, disorganized thought process, paranoia, concrete thinking, and thoughts of worthlessness, loneliness, and helplessness. Dr. Henderson noted that she "explained that he likely had mental illness causing the [auditory hallucinations], and that its late onset was unusual but not unheard of."[64] Dr. Henderson's

---

[62] AR 1447.

[63] AR 1361–66.

[64] AR 1364.

medication-management notes indicate that Plaintiff was struggling with his mental health and there is no mention that was employed, or looking for employment.

Overall, the current record does not substantially support a finding that Plaintiff was gainfully employed in 2024. And Plaintiff's medical-appointment attendance record does not supply substantial evidence to discount his reported difficulty he would have attending and sustaining fulltime work.

e.     _The ALJ must re-evaluate Plaintiff's activities against his reported symptoms._

Finally, the ALJ discounted Plaintiff's reported difficulties with isolation, interacting with others, and irritation because the activities he engages in, including living in a communal clean-and-sober house, doing his own shopping, seeing friends daily, taking care of his personal needs, managing finances, and helping friends move, indicate that he has greater non-exertional abilities than claimed.[65]

---

[65] AR 756.

DISPOSITIVE ORDER - 25

1    In making this finding, the ALJ appropriately considered that

2 Plaintiff lived in communal sober housing and attended AA classes.

3 However, the ALJ failed to fully and fairly evaluate the overall

4 circumstances of Plaintiff's living environment and activities. For

5 instance, consistent with his testimony, Plaintiff also told mental-

6 health providers that he used headphones or isolated in his room to

7 isolate and decrease stress, to reduce triggering auditory

8 hallucinations.[66] Moreover, it is unfair to construe Plaintiff's

9 attendance at AA meetings, given his history of substance abuse, as

10 inconsistent with his auditory hallucinations and resulting symptoms

11 and limitations.

12    On remand, if the ALJ relies again on Plaintiff's ability to see

13 friends daily and help friends move, the ALJ is to develop testimony on

14 this point. For instance, are the friends that he sees daily those that he

15 lives with at the communal house or acquittances from group therapy

16 or substance-abuse treatment sessions? What level of engagement does

17 Plaintiff have with his friends?

18    _____

19 [66] AR 535, 543, 544, 564, 588.

1    In addition, regarding Plaintiff's statement that he can manage

2  his finances, additional testimony about what is involved with

3  managing his finances would be useful, because the record reveals that

4  Plaintiff has difficulties with reading and writing. For instance,

5  because he had difficulty reading, Dr. Henderson accommodated

6  Plaintiff's reading and concentration difficulties by referring to the

7  medications by their first letter only.[67]

8    This record does not supply substantial evidence to the ALJ's

9  finding that Plaintiff's activities are inconsistent with his reported

10  symptoms.

11    3.    Summary

12    The ALJ failed to fairly and fully evaluate the record when

13  evaluating Plaintiff's reported symptoms.

14  **B.    Medical Opinions: The ALJ is to re-evaluate on remand.**

15    The ALJ's evaluation of Plaintiff's symptom reports impacted the

16  ALJ's evaluation of the medical opinions. For instance, when finding

17

18  _____

19  [67] AR 1395.

1  Dr. Haney's state psychiatric opined limitations persuasive, the ALJ

2  stated:

3      For instance, as discussed above, treatment notes from
       psychiatrist Dr. Kalnins and other providers reflect mostly
4      normal mental status findings. In many records, the
       claimant reported little or no limitation from mental
5      symptoms. The claimant maintains relationships with
       friends. And he can manage a wide range of activities,
6      including living in a communal setting, managing his
       money, shopping, and doing household chores.[68]

7  Likewise, the ALJ largely relied on Plaintiff's ability to interact with

8  care providers, see friends, and do his own shopping, and

9  "improvement with medication and counseling and . . . generally stable

10 mental status exam findings" to find all five of the consultative

11 psychological examiner opinions inconsistent with or unsupported by

12 the evidence.[69]

13     But as discussed above, mental-health treatment records

14 revealed waxing symptoms, amongst the normal mental status findings

15 relied on by the ALJ. For instance, Plaintiff was observed at times with

16

17 _____

18 [68] AR 756.

19 [69] AR 757–58.

pressured speech, impacted thought process, paranoia, and anxiety, and he needed redirection.[70] The ALJ relied more heavily on the treatment notes authored by psychiatrist Sandra Kalnins, DO, who treated Plaintiff from January 2022 to June 2022 and who generally noted fairly normal mental functions, rather than Phyllis Henderson, MD, who treated Plaintiff from August 2022 to November 2023, and who usually noted abnormal mental functions. Without further discussion as to why these observed waxing mental-health symptoms are not consistent with Plaintiff's reported difficulties, the ALJ's

_____

[70] *See, e.g.*, AR 573 (pressured speech); AR 620, 628 (anxious mood and congruent affect); AR 734–38 (anxious mood; dysphoric, anxious affect; disorganized thought process; poor working memory); AR 1236–41 (poor working memory, paranoid and helpless thought content; disorganized thought process; poor attention span; dysphoric and anxious affect); AR 1255–59 (vigilant, suspicious, twitchy, sad and anxious mood; dysphoric and anxious affect; poor attention span, disorganized and racing thought process; paranoid; concrete cognition; and poor working memory).

1  reliance on the medical records listing normal mental status findings

2  does not supply substantial evidence.

3  The ALJ also found Dr. Haney's reviewing opinion in December

4  2021 persuasive because it "reflects the most comprehensive review of

5  the longitudinal record."[71] Whereas, although Dr. Morgan conducted

6  two psychological evaluations of Plaintiff, one in June 2021 and the

7  other in May 2023, the ALJ found Dr. Morgan's opinions unsupported

8  because "he does not specify the precise records he reviewed," instead

9  merely listing that he reviewed DSHS records, medical records, and a

10  psychological evaluation.[72] On remand, the Social Security

11  Administration is to contact Dr. Morgan, if he is still in practice, and

12  request that he identify the documents he reviewed by date and author

13  for each of his evaluations.[73]

14

15

_____

16  [71] AR 756.

17  [72] AR 757.

18  [73] *See* 20 C.F.R. § 416.917; Program Operations Manual System

19  (POMS), DI 22510.017(B).

Moreover, on remand, the ALJ is to obtain a more recent psychological medical opinion, either from a consultative examiner who is to be given sufficient records to allow for a longitudinal perspective, or from a testifying medical expert.

In addition, testimony is to be obtained from Plaintiff regarding the nature and extent of his interaction with friends, managing his finances, shopping, household chores, and employment, if the ALJ relies on such activities when evaluating the medical opinions.

After development of the record, the ALJ is to reconsider and articulate the persuasiveness of each medical opinion, including explaining whether the medical opinion was consistent with and supported by the record.[74]

---

[74] 20 C.F.R. § 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

1

**C.    Remand: further proceedings.**

2

Plaintiff asks that payment of benefits be directed on remand,

3

rather than more administrative proceedings. The Court declines to

4

remand for benefits.[75] The Court acknowledges this is a close call on

5

this record—a record where Plaintiff had been receiving benefits until

6

they were discontinued upon his incarceration in 2017. However, the

7

Court finds development of the record is necessary, including having

8

Dr. Morgan identify the reviewed documents, obtaining testimony from

9

Plaintiff to clarify, if he is so able, the nature and extent of his daily

10

activities, and then obtaining a more recent psychological opinion from

11

either a consultative examiner or a medical expert.

12

To ensure Plaintiff has a fair hearing on this second remand, the

13

Court directs that the Social Security Administrative assign this

14

15

_____

16

[75] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (recognizing

17

that the decision whether to remand a case for additional evidence, or

18

to award benefits, is within the discretion of the court after weighing

19

the appropriate factors).

1  matter to a different ALJ for a new determination of Plaintiff's

2  disability status.[76]

### IV.   Conclusion

Plaintiff establishes the ALJ erred. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—the sequential process.

Accordingly, **IT IS HEREBY ORDERED**:

1.   The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**. A new ALJ is to be assigned on remand.

2.   The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 16**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

---

[76] *See* 20 C.F.R. § 416.1440; *Reed v. Massanari*, 270 F.3d 838, 845 (9th Cir. 2001).

1    IT IS SO ORDERED. The Clerk's Office is directed to file this

2    order and provide copies to all counsel.

3    DATED this 14th day of October 2025.

4

5    _____
     EDWARD F. SHEA
     Senior United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

DISPOSITIVE ORDER - 34